defendants claim, they are, of course, void; and the defendants must rest their title upon the settlement of Thomas. The inception of this title, being prior to the purchase from the Indians, could give no right whatever to Thomas, and was a violation of the laws of this state; which, for political reasons, prohibited settlements on the Indian lands, under heavy penalties, extending at one time to death. 2 Laws (Smith's Ed.) 123, 113, 119, 126, 124, 127; 1 Bin. 248. If the original settlement was against law, the continuance of it after the purchase from the Indians, can give no title; or otherwise, a settlement, though originally unlawful and even criminal, would be sufficient to defeat the right of a purchaser under the state. By no means could such a settler effectuate his title, but by obtaining, within a reasonable time after the purchase, a warrant from the state, and proceeding afterwards to have it surveyed, and to obtain a grant. 2 Laws (Smith's Ed.) 129.

By the act of 21st December, 1784,—2 Laws (Smith's Ed.) 273,—no right by settlement, to the lands purchased from the Indians, could be acquired, except a right of pre-emption; and not even that, unless the settlement was made before the year 1780, nor unless application for the same were made, and the consideration paid, on or before the 1st of November, 1785. In the case of Buchanan's Lessee v. M'Clure, 1 Bin. 385, it was decided, that an improvement and settlement on lands purchased from the Indians, in November, 1768, made between that date and the opening of the land office, 3d of April, 1769, gave no preference to the settler, against a descriptive application entered in the office on the day it opened. The act of 30th December, 1786, which gives a right of pre-emption to settlers, is confined to the purchase in November, 1768, and limits that right to the 10th of April, 1788. The first law which recognises settlement rights on the lands purchased in 1784, was passed 22d of April, 1794,—3 Laws (Smith's Ed.) 184, 193,—and the kind of settlement is pointed out in the act of the 22d September, 1794. The right by settlement has its origin in the tacit permission of the proprietors, which, after a length of time, became a part of the common law of this state. But it always presumed an implied contract between the proprietor and the settler, that the latter claiming and holding the land under and in right of the proprietor, would, in a reasonable time, perfect his title, by paying the consideration and obtaining a patent. It never could extend to one who claimed adversely to the proprietor, and who for so long a period has taken no steps to perfect his title. This is precisely the case of the defendants, who took possession of these lands, claiming under Connecticut, and in open opposition to this commonwealth.

Mr. Tilghman, for defendants, admitted, that if the defendants settled this land, claiming a right to do so under Connecticut, that they could not succeed.

On this admission, THE COURT left this fact to the jury, with directions to find for the plaintiff, if they should be of opinion that the defendants claimed under Connecticut. Verdict for plaintiff.

---

## Case No. 7,643.

### KEENE v. JACKSON.

[2 Cranch, C. C. 166.] [1]

Circuit Court, District of Columbia. April Term, 1819.

LANDLORD AND TENANT — ATTACHMENT FOR RENT —DISCHARGE IN INSOLVENCY.

An attachment for rent not due, is superseded by the tenant's discharge under the insolvent law of the District of Columbia of the 3d of March, 1803, § 5 [2 Stat. 238].

This was an attachment for rent not due, under the Virginia act of 29th November, 1792, § 8, p. 154.

Mr. Swann, for plaintiff [Newton Keene], moved for judgment on the attachment. Since the attachment was served, and before the rent became due, the tenant, [J. W.] Jackson, was discharged under the insolvent law of the District of Columbia of 3d March, 1803.

Mr. Mason, for trustee of Jackson's effects, objected that the attachment was superseded by the discharge of the tenant under the insolvent act, § 5.

And THE COURT (THRUSTON, Circuit Judge, absent), being of that opinion, quashed the attachment.

---

KEENE (UNITED STATES v.). See Case No. 15,512.

---

## Case No. 7,644.

### KEENE v. WHEATLEY et al.

[9 Am. Law Reg. (1861) 33; 17 Leg. Int. 349; 4 Phila. 157; 5 Pa. Law J. Rep. 501.] [2]

Circuit Court, E. D. Pennsylvania.

THEATRES—PLAYS—COPYRIGHT — LITERARY PROPERTY —AUTHOR'S ASSIGNMENT — ADDITIONS TO MANUSCRIPT—PUBLICATION — PUBLIC PERFORMANCE—PLEADING IN EQUITY — AMENDED BILL— PLEAS.

1. A party asserting her literary proprietorship of an unprinted comedy, under an assignment to her by its author, complained of its theatrical representation by the defendants, without her consent. It had been composed in England for performance at a London theatre. Difficulties of adaptation preventing its performance there, it was thrown back on the hands of the author. He, subsequently, not being a citizen, or a resident of the United States, for a valuable consideration, transferred his proprietorship of it for the United States to the complainant, a resident of New York,

---

·1 [Reported by Hon. William Cranch, Chief Judge.]

2 [17 Leg. Int. 349, and 4 Phila. 157, contain only partial reports.]